**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

ROBERT D. FLETCHER, )
)
         Petitioner, )
)
vs. ) CIVIL NO. 08-266-GPM
)
DAVE REDNOUR, )
)
         Respondent. )

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Before the Court is Petitioner Robert D. Fletcher's Second Amended Petition for Writ of Habeas Corpus filed under 28 U.S.C. § 2254 (Doc. 52). For the following reasons, the petition is denied.

### PROCEDURAL BACKGROUND

On January 21, 2000, a jury in Madison County, Illinois, found Petitioner Robert D. Fletcher guilty of murdering Brian Warr. The trial court sentenced Fletcher to a term of 80 years imprisonment (Doc. 55-3, Ex. C, p. 1).

*Direct Appeal*

Fletcher, with the assistance of counsel, appealed the conviction and sentence, raising five grounds for relief: (1) the trial court erred by denying a motion to suppress statements that Fletcher made to police without counsel; (2) the trial court erred by failing to investigate the overt disagreements between Fletcher and his trial counsel and in denying trial counsel's post-trial motion to withdraw; (3) Fletcher's counsel was ineffective in pursuing a theory of self-defense at

trial, despite Fletcher's insistence that he did not shoot Warr, and in failing to allow Fletcher to testify to his version of the facts; (4) the trial court erred by instructing the jury on the charge of first-degree murder; and (5) the trial court abused its discretion in imposing an extended-term sentence (Doc. 55-1; Ex. A). By order dated December 27, 2001, the Illinois Court of Appeals affirmed the conviction but vacated the extended-term sentence and remanded the case for resentencing (Doc. 55-3, Exh. C).

Fletcher filed a Petition for Leave to Appeal (PLA) to the Illinois Supreme Court, arguing that (1) the appellate court erred by (a) finding that Fletcher received a fair trial despite his complaints to the trial court about disagreements with defense counsel and despite his representation that trial counsel argued self-defense against his wishes and (b) denying counsel's post-trial motion to withdraw and (2) the appellate court erred by remanding the case to allow the trial court to state the grounds on which the extended-term sentence was imposed, where none of those reasons legally justified the sentence (Doc. 55-4, Exh. D). The Illinois Supreme Court summarily denied Fletcher's PLA on April 3, 2002 (Doc. 55-5, Exh. E).

On remand, the trial court resentenced Fletcher to a term of 60 years imprisonment. Fletcher appealed the sentence, arguing that the trial court abused its discretion by sentencing him to the maximum, non-extended-term sentence. The Court of Appeals affirmed the sentence on November 26, 2003 (Doc. 55-7, Exh. H). Fletcher filed a PLA (Doc. 55-7, Exh. I), which was summarily denied on April 15, 2004 (Doc. 55-7, Exh. J).

*First Petition for Post-Conviction Relief*

Fletcher filed a *pro se* petition for post-conviction relief on September 20, 2004. The trial court summarily dismissed the petition as frivolous and patently without merit and noted that it had

difficulty discerning Fletcher's claims. The court recognized, though, that Fletcher raised a due process claim that the State "knowingly used or should have known that it used false testimony" (Doc. 55-7, Exh. K).

Fletcher, still acting *pro se*, appealed the denial of his post-conviction petition, arguing generally that the trial court erred by finding that Fletcher had not stated the "gist" of any constitutional claim to withstand summary dismissal of his post-conviction petition and by not advancing Fletcher's post-conviction petition from the first to the second stage of the Illinois Post-Conviction Hearing Act. More specifically, Fletcher argued that prosecution witnesses Jesse Johnson and Detective Jason Simmons gave testimony at his trial that the State knew, or should have known, was false, which resulted in prosecutorial misconduct, a due process violation, and ineffective assistance of counsel for failing to object to the false testimony (*see* Arguments I and II, Ex. L, Doc. 55-7). Fletcher also argued that his appellate counsel was ineffective for failing to raise the ineffectiveness of his trial counsel regarding the State's use of false testimony, the State's withholding of that evidence from Fletcher, and the trial court's failure to suppress Fletcher's statements made to police without counsel present (*see* Argument III, Ex. L. Doc. 55-7). Finally, Fletcher argued that the trial court erred in its procedural handling of his post-conviction petition (*see* Arguments IV and V, Ex. L, Doc. 55-7).

The Court of Appeals, in affirming the summary dismissal of the post-conviction petition, summarized Fletcher's claims on appeal as ineffective assistance of appellate counsel for failing to argue that (1) Fletcher's statements to police were made in violation of his Sixth Amendment right to counsel; (2) trial counsel was ineffective for failing to object to the State's use of perjured testimony; and (3) trial counsel was ineffective for failing to assert that the State withheld evidence

in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (Doc. 55-7, Ex. O). Fletcher filed a PLA urging the Illinois Supreme Court to reverse the appellate court's findings on each of the three issues (Doc. 55-7, Ex. P). The Illinois Supreme Court summarily denied the PLA on November 29, 2007 (Doc. 55-7, Ex. Q).

### *Second Petition for Post-Conviction Relief*

On October 29, 2008, Fletcher, acting *pro se*, sought leave to file a second or successive post-conviction petition in the trial court (Doc. 55-19, Ex. T). Fletcher raised six claims: (1) his appellate counsel was ineffective for failing to raise violations of his right to a speedy trial; (2) the State suppressed favorable evidence that could have been used to impeach prosecution witness Jody Wesley – specifically, that Wesley testified in return for favorable treatment on pending charges – in violation of the Fourteenth Amendment; (3) the State failed to disclose evidence favorable to Fletcher regarding the death of Nekemar Pearson in violation of *Brady*, 373 U.S. 83; (4) the State acted improperly by offering a witness the choice of testifying against Fletcher or being charged with murder; (5) the State acted improperly by relying on inconsistent prosecutorial theories in trying two defendants for the murder of Brian Warr; and (6) Fletcher's trial counsel improperly represented both Fletcher and another individual charged with the same crime (Doc. 55-19, Ex. T). On November 25, 2008, the trial court found that Fletcher had not demonstrated cause and prejudice for his failure to raise the issues in his first post-conviction petition and denied him leave to file a second post-conviction petition (Doc. 55-19, Ex. U).

### *Federal Petition for Writ of Habeas Corpus*

Fletcher filed his initial *pro se* petition for writ of habeas corpus in federal district court on April 8, 2008. In December 2008, Fletcher filed a Motion for Stay and Abeyance, asking the

Court to stay the federal proceedings to allow him to complete exhaustion of some of the claims raised in his original state court petition (Doc. 19). In September 2009, the Court denied the motion without prejudice and appointed counsel for Fletcher. Fletcher, through appointed counsel, filed an amended petition in October 2010 and a second amended petition in August 2011. Respondent answered the second amended petition on September 14, 2011. The second amended petition (Doc. 52) is operative, and this Court will not consider claims raised in previously-filed petitions that are not included in the second amended petition.

Fletcher raises the following grounds for relief:

I. Trial counsel was ineffective for failing to investigate Fletcher's claim of innocence and for presenting a claim of self-defense without consulting with Fletcher;

II. The trial court erred by not allowing Petitioner's trial counsel to withdraw from the case;

III. The State violated *Brady*, 373 U.S. 83, by failing to disclose exculpatory evidence concerning the arrest of and criminal charges against prosecution witness Jody Wesley, who testified against Fletcher in exchange for favorable consideration by the State;

IV. The State violated *Brady*, 373 U.S. 83, and the Fourth, Sixth, and Fourteenth Amendments by failing to disclose exculpatory evidence that Nekemar Pearson, who allegedly was killed in June 1995, was alive on July 3, 1995;

V. The State failed to correct the false testimony of witness Jody Wesley;

VI. The State failed to correct the false testimony of witness Jesse Johnson;

VII. The State failed to correct the false testimony of witness Jason Simmons;

VIII. The State improperly asserted conflicting theories of prosecution in Fletcher's trial and the trial of Larry Greer, who was charged with the same offense;

IX. The State improperly interfered with defense witness Larry Greer, causing him to testify falsely and preventing him from testifying on Fletcher's behalf;

X. Appellate counsel was ineffective for failing to argue that Fletcher's trial counsel was ineffective for failing to object to a speedy trial violation;

XI. Appellate counsel was ineffective for failing to assert that Fletcher's trial counsel was ineffective for failing to object to a discovery violation; and

XII. Appellate counsel was ineffective for failing to assert that Petitioner's trial counsel was ineffective for failing to object when the State failed to correct false testimony of two witnesses.

## FACTUAL BACKGROUND

The relevant facts are taken from the appellate court's opinion on direct appeal:

> During the early morning hours of September 12, 1998, Brian Warr was shot and killed while sitting in a car parked behind an establishment known as the Chess Club. After the shooting, defendant confessed to several individuals that he had killed Warr. Before the shooting, several individuals heard defendant say that he was going to kill somebody that evening. One person testified that defendant specifically asked him to kill Warr, and when he refused, defendant became angry. Evidence placed defendant in a car that was seen traveling to the rear of the Chess Club moments before gunshots were heard. Other evidence linked defendant to possessing the same type of gun that was capable of discharging the same type of bullets that killed Warr. Finally, several witnesses testified that defendant had threatened to harm them if they testified against him. Upon our review of the evidence introduced at the trial, we believe that the evidence of defendant's guilt was overwhelming.

(Doc. 55-3, Ex. C, p. 2).

## PROCEDURAL DEFAULT – EXHAUSTION OF STATE COURT REMEDIES

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). When "a petitioner does not adequately present a claim to the state court," the claim is procedurally defaulted and will not be considered on the merits by a federal court on habeas review unless there is a showing of "cause and prejudice for the default or … that a failure to grant him relief would work a fundamental miscarriage of justice." *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005). A fundamental miscarriage of justice means "the conviction of an innocent person." *Hayes v.*

*Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005). A petitioner must "fairly present" his claim to the state court to allow it the opportunity to correct any constitutional violations. *Sanders v. Cotton*, 398 F.3d 572, 581 (7th Cir. 2005). "Fair presentment" requires the petitioner to invoke "one complete round of the State's established appellate review process" for each claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005). He must present "operative facts and controlling legal principles" for the state court to review. *Cotton*, 398 F.3d at 580. "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Bintz*, 403 F.3d at 863 (internal quotation omitted). The respondent bears the burden of showing that a petitioner has procedurally defaulted his claims.

Fletcher raised the following federal grounds for the first time in his attempted second successive petition for post-conviction relief:

Ground III – the State failed to disclose potentially exculpatory evidence that prosecution witness Jody Wesley falsely testified against Fletcher in exchange for a reduction in or withdrawal of pending state charges against him;

Ground IV – the State failed to disclose potentially exculpatory evidence regarding Nekemar Pearson's death;

Ground V[1] – the State failed to correct the false testimony of prosecution witness Jody Wesley;

Ground VIII – the State used conflicting theories of prosecution in trying both Fletcher and Larry Greer for the murder of Brian Warr;

---

[1]Fletcher raised the issue of the State's improper introduction of testimony it knew, or should have known, was false in his first petition for post-conviction relief and on appeal of the denial of that petition. He did not, however, discuss the testimony of Jody Wesley until seeking leave to file a successive petition for post-conviction relief. In his first, exhausted petition for post-conviction relief, he raised the false testimony issue only as to prosecution witnesses Jesse Johnson and Jason Simmons.

Ground IX – the State improperly interfered with and caused Larry Greer to testify falsely and further prevented him from testifying on Fletcher's behalf; and

Ground X – appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to object to a speedy trial violation.

Under Illinois law, a criminally-convicted defendant is entitled to only one post-conviction proceeding in the trial court. *See Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002); 725 ILCS 5/122-3 ("Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived."). Under federal habeas corpus jurisprudence, "[a] state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time – as state rules define those courts, ways, and times." *Szabo*, 313 F.3d at 395, *citing Wainwright v. Sykes*, 433 U.S. 72 (1977). A habeas petitioner's failure to follow a state's procedural rules for raising constitutional claims provides an "independent and adequate state ground of decision" which blocks collateral review by a federal court on a petition for writ of habeas corpus. *Szabo*, 313 F.3d at 395, *citing Harris v. Reed*, 489 U.S. 255 (1989).

Fletcher failed to raise Grounds III, IV, V, VIII, IX, and X in either his direct appeal or his first post-conviction petition and subsequent appeal. These claims have not received one complete round of state court review. They have not been exhausted and are, therefore, procedurally defaulted. This Court can consider the merits of these claims only if Fletcher can demonstrate cause and prejudice for the default. Fletcher does not concede that any of these grounds for relief were procedurally defaulted; thus, he makes no argument regarding cause and prejudice. Nonetheless, the Court will examine whether he can avoid his procedural default.

"When a petitioner does not adequately present a claim to the state courts, he may obtain federal habeas relief only upon a showing of cause and prejudice for the default or upon a showing

that a failure to grant him relief would work a fundamental miscarriage of justice." *Richardson*, 401 F.3d at 801. To establish cause, Fletcher must show that "an external impediment" prevented him from presenting his arguments before the state courts. *See Bintz*, 403 F.3d at 864. To show prejudice, he must present evidence that the errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004), *quoting United States v. Frady*, 456 U.S. 152 (1982) (emphasis omitted).

Fletcher makes no argument that would demonstrate cause for the default of Grounds III, IV, V, VIII, IX, or X, nor has he shown resulting prejudice. The Court's review of the record reveals neither cause for the default nor prejudice. Likewise, the record does not reveal a fundamental miscarriage of justice, which requires the showing of a constitutional violation "which probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To meet this burden, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* This requires "a stronger showing than that needed to establish prejudice." *Id.*

Fletcher contends that his appellate counsel was ineffective, but "bare mention of ineffective assistance of counsel is not sufficient to avoid a procedural default." *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009). Rather, he must identify "specific acts or omissions of counsel" that support a claim of ineffective assistance. *Id.* Moreover, "a claim of ineffectiveness must itself have been fairly presented to the state courts before it can establish cause for procedural default of another claim." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004), *citing Edwards*, 529 U.S. at 452-54. Any claim by Fletcher that ineffective assistance of

counsel caused the procedural default is itself procedurally defaulted because he failed to raise it in state court. *See Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010), *citing Edwards*, 529 U.S. at 452-54). The Court finds no cause and prejudice nor that a fundamental miscarriage of justice occurred to avoid the default of these claims.

## MERITS REVIEW

An inmate in state custody may challenge his underlying state conviction in a petition for habeas corpus relief filed pursuant to 28 U.S.C. §2254. A claim that has been adjudicated on the merits in a state court proceeding is governed by 28 U.S.C. §2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established Supreme Court precedent when it reaches a legal conclusion that is opposite to a legal conclusion announced by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Owens v. Frank*, 394 F.3d 490, 496-497 (7th Cir. 2005). A state court's conclusion is an "unreasonable application" of Supreme Court precedent when the state court identifies the correct legal rule as determined by the Supreme Court but unreasonably applies it to the facts of the case, unreasonably extends a legal principle from existing precedent, or refuses to extend that principle to a new context where it should apply. *Owens*, 394 F.3d at 496-497. As pronounced by the Supreme Court:

> We have made clear that the "unreasonable application" prong of § 2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of petitioner's case. In other words, a federal court may grant relief when a state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced." In order for a federal court to find a state court's application of our precedent "unreasonable," the state court's decision must have been more than incorrect or erroneous. The state court's application must have been "objectively unreasonable."

*Wiggins v. Smith*, 539 U.S. 510, 520-521 (2003) (internal citations omitted). The writ may not issue merely because the state court applied clearly established federal law erroneously or incorrectly; the application also must be unreasonable. *Williams*, 529 U.S. at 411; *see also Owens*, 394 F.3d at 497. A petitioner bears the burden to show that he is entitled to relief. *See Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004).

The Supreme Court recently reiterated that a federal court on habeas review should treat a state court's decision with "deference and latitude." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011). Under 28 U.S.C. §2254(d), a federal court is barred from "relitigating" any claim adjudicated on the merits in state court, with two exceptions: (1) where a state court's decision "was contrary to" federal law then clearly established by the Supreme Court or it "involved an unreasonable application" of federal law or (2) where a state court's decision "was based on an unreasonable determination of the facts" based upon the state court's review of the record. *Harrington*, 131 S. Ct. at 785. A federal court's inquiry in habeas is not whether a state court's decision was an incorrect interpretation of the underlying constitutional claim but, rather, whether the application of federal law was unreasonable. *Id.* at 787. Habeas corpus is not "a substitute for ordinary error correction through appeal," and the unreasonableness standard is "difficult to meet" because "it was meant to be." *Id.* at 786. Because the emphasis is on the reasonableness,

Page **11** of **18**

not the correctness, of a state court's decision, federal habeas relief is precluded when "fairminded jurists could disagree on the correctness of the state court's decision." *Id*. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id.*

### *Grounds I and II*

Fletcher raises two grounds that involve alleged ineffectiveness of trial counsel. In Ground I, he argues that his trial counsel was ineffective for failing to fully investigate his innocence and for presenting a theory of self-defense against Fletcher's wishes. In Ground II, he argues that the trial court erred in denying trial counsel's post-trial motion to withdraw. Fletcher raised both of these claims on direct appeal (Doc. 55-3, Ex. C). The appellate court fully described the facts underlying the relationship between Fletcher and trial counsel (*see Id*. at pp. 5-9). Citing *Strickland v. Washington*, 466 U.S. 688 (1984), the appellate court rejected Fletcher's ineffective assistance of trial counsel claims because they involved trial strategy and were attributable to Fletcher's refusal to cooperate with counsel (*see Id*. at pp. 10-15).[2]

At the time Fletcher's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *See Strickland*, 466 U.S. 668. To establish an ineffective assistance of counsel claim, a convicted defendant must show (1) that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment and (2) that counsel's deficient performance prejudiced the defense. *Id.* at 687. To establish prejudice, a defendant must demonstrate "a

---

[2]The appellate court's opinion is part of the record in this case; the Court finds no reason to recite the detailed findings here.

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When a court reviews a petitioner's claim, it must evaluate whether his counsel's performance undermined the adversarial process to the extent that "the trial cannot be relied on as having produced a just result." *Id.* at 686. A court's review of counsel's performance "must be highly deferential." *Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). Importantly, "[a] defendant's own conduct may serve to waive his right to appointed counsel." *Hall v. Washington*, 106 F.3d 742, 751 (7th Cir. 1997).

The standards for judging performance of counsel under *Strickland* and under section 2254(d) both are highly deferential, and "[w]hen the two apply in tandem," deference is "doubly so." *Harrington*, 131 S. Ct. at 788. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

Applying this doubly deferential standard to Fletcher's case, it was not unreasonable for the state court to conclude that trial counsel was not deficient in choosing to proceed with a theory of self-defense. As noted by the state court, the evidence of Fletcher's guilt was "overwhelming." The record does not reveal the extent to which trial counsel investigated Fletcher's innocence, but counsel tried to introduce evidence that Warr aimed a gun with a laser-site at Fletcher prior to the shooting. It was not unreasonable for trial counsel to choose to proceed on a self-defense theory

in the face of overwhelming evidence of Fletcher's guilt and little to no exonerating evidence, aside from Fletcher's own convoluted and uncooperative testimony. Likewise, it was not unreasonable for trial counsel to tell the jury that Fletcher shot the victim because a viable theory of self-defense requires such an admission. The appellate court found that counsel's decision to pursue a theory of self-defense was a matter of trial strategy, which cannot support a finding of ineffective assistance of counsel. This determination is neither contrary to nor an unreasonable application of federal law.

The appellate court also determined that any prejudice resulting from the events at trial was caused by Fletcher himself and not by any ineffectiveness on the part of his attorney. The court determined that Fletcher had ample opportunity to raise his objection to the proposed self-defense theory prior to taking the stand. The trial court held two pretrial hearings on counsel's motion to withdraw. Moreover, trial counsel raised the theory of self-defense in the opening statement two days before Fletcher testified. Fletcher waited until he was on the stand to testify to state, in the presence of the jury, that he did not shoot Warr. In light of these facts, the appellate court's determination that any deficiency of counsel did not prejudice Fletcher was neither contrary to nor an unreasonable application of federal law.

The court also finds that it was not unreasonable for the trial court to deny the post-trial motion to withdraw as counsel. The Sixth Amendment does not guarantee a "meaningful relationship" between counsel and the accused. *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Motions for substitution of counsel should be granted only when "counsel and defendant are so at odds as to prevent presentation of an adequate defense." *Hall*, 106 F.3d at 751. The Sixth Amendment may be violated when counsel "entirely fails to subject the prosecution's case to

meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 659 (1984).

Fletcher's trial counsel cross-examined prosecution witnesses and produced witnesses to testify in Fletcher's defense. Fletcher was given the opportunity to testify on his own behalf, and he did so, even though he refused to answer his attorney's questions designed to elicit his version of the events. A sheriff's deputy sat between Fletcher and counsel during trial because Fletcher threatened to physically harm his attorney. After the trial was completed, Fletcher's counsel asked to withdraw. The appellate court found that, under Illinois law, appointment of new post-trial counsel was not warranted because Fletcher's allegations of ineffective counsel pertained only to trial tactics and did not demonstrate that counsel neglected his case. Although the record suggests a strained relationship between Fletcher and trial counsel, it does not reflect a relationship so broken that counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *See Cronic*, 466 U.S. at 659. The appellate court's determinations regarding ineffective assistance of trial counsel and the trial court's denial of the post-trial motion to withdraw were neither contrary to nor an unreasonable application of clearly established federal law. Accordingly, these grounds for relief are denied.

### *Grounds VI, VII, and XII*

Fletcher raises three grounds involving prosecutorial misconduct. He argues that the state failed to correct the false testimony of witness Jesse Johnson (Ground VI), that the state failed to correct the false testimony of Jason Simmons (Ground VII), and that his appellate counsel was ineffective for failing to raise ineffectiveness of trial counsel for failing to object to the false testimony of the two witnesses (Ground XII). In affirming the state court's summary dismissal of Fletcher's first post-conviction petition, the appellate court found that while the challenged

testimony was inconsistent, it was not perjurious and, therefore, did not implicate Fletcher's due process rights. Having so found, the appellate court concluded that trial and appellate counsel were not ineffective for failing to present this argument. (Doc. 55-7, Ex. O, pp. 8-10).

A conviction obtained on the basis of false evidence violates the constitution. It matters not whether the evidence was knowingly or unintentionally proffered; the prosecution must correct false evidence when it appears. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). On direct appeal, a new trial is required when "material" evidence is suppressed or uncorrected. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972). A new trial is not automatically required, however, unless the false evidence is "material" under *Brady*, 373 U.S. at 87, and could "in any reasonable likelihood have affected the judgment of the jury." *Giglio*, 405 U.S. at 154. Stated another way, "the fact that testimony is perjured is considered material unless failure to disclose it would be harmless beyond a reasonable doubt." *United States v. Bagley*, 473 U.S. 667, 679-80 (1985). A prosecutor violates his constitutional duty of disclosure only if "his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* at 675-76.

The appellate court applied the controlling legal standard that false testimony is not perjury unless it is "material" and could have influenced the trier of fact in its deliberations, even though it did not cite Supreme Court precedent. *See Harrington*, 131 S. Ct. at 784 (a state court is not required to recognize "or even be aware of" Supreme Court cases). The appellate court determined that the factual inconsistencies raised by Fletcher were just that, inconsistencies, which did not rise to the level of perjury. The appellate court found that while the testimony surrounding Johnson's placement in segregation was "technically inaccurate," it was not perjury. The appellate court further reasoned that Johnson's prior inconsistent statements were raised by the

defense on cross-examination and were properly used to impeach Johnson's testimony at trial. The appellate court concluded that none of the inconsistencies and inaccuracies in the testimony of Johnson and Simmons involved "matters material to whether or not he shot and killed Brian Warr outside the Chess Club on September 12, 1998" (Doc. 55-7, Ex. O, p. 10).

The appellate court's determination that the testimonial inconsistencies were not material to Fletcher's guilt or innocence was not an unreasonable conclusion, and its determination that the statements of Johnson and Simmons were not perjury and, therefore, were not improperly neglected, was neither contrary to nor an unreasonable interpretation of relevant Supreme Court precedent. These grounds for relief are denied.

### *Ground XI*

Fletcher contends that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to object to a discovery violation. In affirming the summary dismissal of Fletcher's first post-conviction petition, the appellate court found that the undisclosed evidence that Fletcher had threatened to have Johnson killed if Johnson testified against him was neither favorable to Fletcher nor material under *Brady* and, therefore, appellate counsel was not incompetent for failing to pursue the argument (Doc. 55, Ex. O, pp. 10-11).

Due process is violated when the prosecution suppresses evidence favorable to a criminal defendant where the evidence is material to guilt or to punishment without respect to the good or bad faith of the prosecution. *See generally Brady*, 373 U.S. 83. The prosecution's duty of disclosure covers both impeachment and exculpatory evidence. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). To violate the rule in *Brady*, the suppressed evidence must be favorable to the defendant as exculpatory or for purposes of impeachment; whether the suppression is willful or

inadvertent, prejudice must result.  *Id*. at 281-82.  A *Brady* violation will be found only if "the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."  *Id.* at 281.

Fletcher contends that the "threat evidence" was not properly disclosed by the prosecution prior to the trial.   In rejecting this argument, the appellate court identified *Brady* as the controlling legal standard.   Its finding that the threat evidence was neither material nor favorable to Fletcher's defense was not unreasonable.  Evidence of the threat is not material to the question whether Fletcher murdered Brian Warr, and it is hard to fathom how evidence that Fletcher threatened to kill a witness would be favorable to his defense.  Arguably, evidence that Fletcher threatened Johnson would tend to support his guilt.  Regardless, introduction of the threat evidence did not prejudice Fletcher because his trial counsel impeached Johnson with the information.  The appellate court's analysis of the threat evidence was neither contrary to nor an unreasonable application of Supreme Court precedent.   Habeas relief is denied on this ground.

## CONCLUSION

For the foregoing reasons, Grounds III, IV, V, VIII, IX, and X, are procedurally defaulted. Grounds I, II, VI, VII, XI, and XII are denied on their merits.   The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:   09/30/11

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge